## UNITED STATES *v.* SANDREY.

*(Circuit Court, E. D. Louisiana. December 26, 1891.)*

IMMIGRATION — DESTITUTE ALIENS — STOWAWAYS ENROLLED AS SAILORS — DUTY OF MASTER.

Where a stowaway, found upon a British vessel soon after leaving Liverpool, is in good faith regularly enrolled as a member of the crew for the voyage to New Orleans and return, his *status* is thereby fixed as a British sailor, and he cannot be regarded as a destitute alien immigrant, so as to charge the master, upon arrival at New Orleans, with the duties and penalties imposed by Act Cong. March 3, 1891, in respect to the immigration and importation of aliens; and the fact that such sailor deserts while in port does not affect the master's responsibility.

At Law. Complaint against S. S. Sandrey for violating the immigration laws. Before the circuit judge as committing magistrate. Rev. St. § 1014.

*Wm. Grant*, U. S. Atty.

*S. Gilmore* and *John Baldwin*, for defendant.

PARDEE, J. The affidavit in this case made by Ferdinand Armant, United States commissioner and inspector of immigration, charges that S. S. Sandrey—

"Then being master of the British steam-ship Cuban, from Liverpool, England, brought into the United States, to-wit, to the port of New Orleans, Louisiana, on board said ship, one alien immigrant, who was not entitled to land, viz., —— Murray, aged 17 years, who was a pauper, and likely to become a public charge, and was therefore excluded from admission into the United States; and affiant further charges that on the arrival aforesaid of the said alien immigrant on the said steam-ship in the United States, as aforesaid, the said S. S. Sandrey, the commander of the said vessel, unlawfully and negligently did permit the said alien immigrant to land therein at a time and place other than that designated by the inspecting officers of alien immigrants arriving in the United States, in violation of sections 6 and 8 of the act approved March 3, 1891, contrary to the form," etc.

The facts of the case, as appears by the evidence, are that the steamship Cuban, of which the accused is master, is a duly-registered British vessel, sailing under the British flag, now lying in the port of New Orleans; that on the last voyage of the said steam-ship she left Liverpool on the 21st of November, and on the morning of the 23d the chief mate found two stowaways on board of the ship, the man —————— Murray, named in the affidavit, and another, —————— Stanley, both British subjects. It may be noticed that a "stowaway" is one who conceals himself on board a vessel about to leave port in order to obtain a free passage. The said stowaways were reported to the master, and on the following day he put them on the ship's articles, and duly shipped and enrolled them as part of the crew of the steam-ship Cuban for the voyage from Liverpool to New Orleans and return to Liverpool, from which time the men went on duty, and so remained until after the arrival of the ship in the port of New Orleans, where the said —————— Murray deserted, Stanley remaining on board the ship, where he now is on duty as a regular member of the crew. Stanley was about 17 years of age, and Murray was 19. Both were, so far as they had any trade, cleaners of boilers, which is work usually given to boys. They were not persons of means, and, except for the employment as seamen, would be considered destitute persons. After the vessel landed in the port of New Orleans these men were treated as belonging to the crew, and given the usual liberty when not required for duty on board the ship. No capitation tax was paid upon either, nor was any report made of them as passengers. Some days after the vessel arrived the commissioner of immigration visited the ship, inquired into the facts, and decided that the two persons, Stanley and Murray, were aliens belonging to a class of persons whose landing in the United States is prohibited by the act of congress approved March 3, 1891, gave his decision to the officers in charge verbally, and afterwards served written notice upon the master. At that time Murray had already deserted the ship. The master, in his examination, swears to information that Murray has already reshipped on another vessel, and is now *en route* to Liverpool; that Stanley is still on board, is not locked up nor otherwise confined, and is working on board, like any other man, as a member of the crew.

The act of congress approved March 3, 1891, entitled "An act in amendment to the various acts relative to immigration and the importation of aliens under contract or agreement to perform labor," in its first section provides—

"That the following classes of aliens shall be excluded from admission into the United States, in accordance with the existing acts regulating immigration other than those concerning Chinese laborers: All idiots, insane persons, paupers, or persons likely to become a public charge, persons suffering from a loathsome or a dangerous contagious disease, persons who have been convicted of a felony or other infamous crime or misdemeanor, involving moral turpitude, polygamists, and also any person whose ticket or passage is paid for with the money of another, or who is assisted by others to come, unless it is affirmatively and satisfactorily shown on special inquiry that such person does not belong to one of the foregoing excluded classes, or to the class

of contract laborers excluded by the act of February twenty-sixth, eighteen hundred and eighty-five; but this section shall not be held to exclude persons living in the United States from sending for a relative or friend who is not of the excluded classes, under such regulations as the secretary of the treasury may prescribe: provided, that nothing in this act shall be construed to apply to or exclude persons convicted of a political offense, notwithstanding said political offense may be designated as a 'felony, crime, infamous crime, or misdemeanor, involving moral turpitude,' by the laws of the land whence he came or by the court convicting."

The object and purpose of the act clearly appear from the title and the section quoted, and may be summarized to be to prevent the importation of aliens under contract or agreement to perform labor, and the immigration of aliens of certain objectionable classes specifically enumerated. The remaining sections of the act relate to the methods and details of accomplishing the aforesaid purpose. It is only the sixth and eighth with which we are particularly concerned in this case.

The sixth section imposes a penalty upon any parties who, in violation of the object and purpose of the act, shall bring into or land in the United States, by vessel or otherwise, or aid to bring into or land in the United States, by vessel or otherwise, any alien not lawfully entitled to enter the United States; that is, bring into or land in the United States any alien under a contract or agreement to perform labor, or any alien immigrant belonging to any of the objectionable classes enumerated in the statute.

The eighth section defines the duties of agents and masters of vessels bringing into the United States alien immigrants, as to reporting the name, nationality, last residence, and destination of every such alien; the duties of inspection officers in regard to the inspection and the examination and detention of such alien immigrants; and gives the inspection officers certain powers as to the administration of oaths, and the taking of testimony touching the right of such aliens to enter the United States; provides for the effect of the decisions of inspection officers touching the right of any alien to land; requires the masters and agents of vessels bringing alien immigrants into the United States to adopt precautions to prevent the landing of such immigrants at any time or place other than that designated by the inspection officers; and then imposes a penalty upon any such officer or agent or person in charge of a vessel who shall knowingly or negligently land, or permit to land, any alien immigrant at any place or time other than that designated by such inspection officers. The section further authorizes the secretary of the treasury to prescribe rules for inspection along the borders; limits the number of inspectors to be appointed; and, further, defines their duties.

As clearly appears, the act deals only with the importation of aliens under contract to labor and alien immigration. It is only with regard to alien immigrants that the act imposes duties upon the masters and agents of vessels, or provides penalties for the non-performance of duties by such masters and agents. An alien immigrant to the United States is an alien who comes or removes into the United States for the purpose of permanent residence. Aliens composing the crews of vessels visiting

our seaports are in no sense immigrants, and, as the review of the statute as above shows, are in no wise affected by the law in question. With regard to them, the said law imposes no duties nor penalties upon the masters and agents of vessels. The case shows that the man Murray, charged in the affidavit to be an alien immigrant and pauper, likely to become a public charge, and not entitled to land in the United States, was, when he came to this port, a duly-enrolled seaman on board of a British vessel, shipped for a voyage from Liverpool to New Orleans, and return to Liverpool. Prior to his shipment he was a stowaway and destitute, and his purpose may have been to emigrate to the United States. But when he was enrolled as a seaman, and signed articles for a voyage from Liverpool to New Orleans and return to Liverpool, his *status* as a British seaman became fixed. He ceased, for the time being, at least, to be a possible immigrant; and with regard to him the master of the steam-ship Cuban, the accused in this cause, was charged with no duties, nor exposed to any penalties, under the act of congress approved March 3, 1891. His desertion after the arrival of the ship at the port of New Orleans in no wise affects the duty or the responsibility of the accused. Murray's legal *status*, if he is now in this country, is not that of an immigrant, but that of a deserter from his ship. We are not dealing with a case where a vagrant sailor has been brought to this country and discharged in a destitute condition, nor with a case where the master of a vessel has connived with an immigrant, within the objectionable classes enumerated, to smuggle him into the country under cover of shipping articles. When such cases arise, it can be determined whether the masters of such offending vessels have rendered themselves amenable to the penalties defined by the act of congress aforesaid. All the circumstances of the present case show that the accused has acted openly and above board, within the line of his duty as master of the vessel, and no wise in violation of the laws of the United States. The complaint is dismissed, and the accused discharged.