SCHARRENBERG v. DOLLAR S. S. CO. et al. *

(Circuit Court of Appeals, Ninth Circuit. February 14, 1916.)

No. 2614.

ALIENS ⊙═56—"CONTRACT LABORER"—"UNITED STATES"—STATUTORY PROVISIONS.

　　It was not a violation of Immigration Act Feb. 20, 1907, c. 1134, § 4, 34 Stat. 900 (Comp. St. 1913, § 4248), making it a misdemeanor to prepay the transportation or assist in the importation of contract laborers into the United States, for the operators of a merchant vessel flying the Amer-

---

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied May 8, 1916.

ican flag to bring aliens from China to the port of San Francisco under contract to join the crew of such vessel, since, while the public and private vessels of every nation, while on the high seas and without the territorial limits of any state, are subject to the jurisdiction of the state to which they belong and are in many respects considered a part of its territory, a merchant vessel flying the American flag is not a part of the United States within the immigration laws, nor is a sailor whose home is on the sea a contract laborer within those laws.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113–116; Dec. Dig. ⊜⟹56.

For other definitions, see Words and Phrases, First and Second Series, Contract Laborer; United States.]

In Error to the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Action by Paul Scharrenberg against the Dollar Steamship Company and others. Judgment for defendants on demurrer, and plaintiff brings error. Affirmed.

This was an action by a private party to recover penalties for knowingly assisting, encouraging, and soliciting the migration and importation of contract laborers into the United States in violation of the Act of Congress of February 20, 1907, as amended by the Act of March 26, 1910, commonly known as the Immigration Act. 34 Stat. 898; 36 Stat. 263 (Comp. St. 1913, §§ 4244, 4247). Section 4 of that act provides:

"That it shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section 2 of this act." Comp. St. 1913, § 4248.

Section 5 provides:

"That for every violation of any of the provisions of section four of this act the persons, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his own benefit, including any such alien thus promised labor or service of any kind as aforesaid, as debts of like amount are now recovered in the courts of the United States; and separate suits may be brought for each alien thus promised labor or service of any kind as aforesaid." Comp. St. 1913, § 4250.

The complaint contains 19 counts or causes of action in all; but the several counts or causes of action are identical, except as to the name of the alien immigrant. After alleging the incorporation of the defendants the Dollar Steamship Company, Dollar Steamship Line, and the Robert Dollar Company, that the defendants were the operators of a certain steam merchant vessel flying the British flag, known as the Bessie Dollar, and of a certain American steamship merchant vessel flying the American flag, known as the Mackinaw, and that the defendant Abernethy was in the employ of the defendants as master of the steamship Bessie Dollar, the complaint proceeds as follows:

"That as plaintiff is further informed and believes, and so avers, the defendant herein, at the times hereinafter mentioned, knowingly assisted and encouraged the importation and the migration of a certain contract laborer and alien person, named ·Dung Pau, into the United ·States of America, for the purpose of his performing labor in the said United States, he at all of the times herein mentioned being a Chinese person, whose birthplace and residence was and is the city of Shanghai, in China, as follows:

"That on the 3d day of December, A. D. 1913, the said vessel Bessie Dollar was lying in the port of Shanghai, in China, with a full complement of officers and a full crew on board, each of whom had signed shipping articles to serve in their respective capacities on said vessel on a voyage thence to other parts. of the world and return, and at that time the defendants herein other than defendant James Abernethy, desiring to procure a Chinese person, alien and contract laborer, to bring to the United States of America to perform labor for them therein, to wit, to serve as a seaman on board of the said vessel Mackinaw, and with that intent, they caused the said James Abernethy to engage said contract laborer for that purpose, which he did, and to and he did enter into a contract in writing with said contract laborer before consul of Great Britain at said Shanghai, which said contract was a contract designated and known as shipping articles, and in the instance herein mentioned were additional and other shipping articles to the shipping articles already as hereinbefore mentioned signed by the officers and crew of the said vessel Bessie Dollar, which said additional shipping articles were signed by the said defendant Abernethy and the said contract laborer at the request of the other defendants herein, the said Abernethy and the said contract laborer both signing the same as aforesaid, and in said shipping articles the said contract laborer agreed to go on board of the said vessel Bessie Dollar and work for defendants, and they agreed to employ him thereon and to bring him to the said United States, so that he could work for the said defendants therein other than said defendant Abernethy, although at that time no seaman or other persons were needed to work upon the said Bessie Dollar, the said shipping articles so signed by said Abernethy and the said contract laborer describing the latter's employment as follows; that is to say: Said contract laborer was to work as a purported seaman on said vessel Bessie Dollar, 'on voyages from Shanghai to San Francisco, there to join the S. S. Mackinaw, or any other vessel, within the limits of 70 degrees north and 70 degrees south latitude, trading to and from as may be required, and back to Shanghai, to be discharged with consent of local authorities. Term of service not to exceed two (2) years. The master has the option to transfer any or all of the within mentioned persons to any other British or foreign ship bound to Shanghai in the same capacity and at the same rate of wages.'

"That the real purpose of defendants other than the defendant Abernethy, was to employ said contract laborer within the United States of America, and that after the signing of said contract and on or about the 3d day of December, 1913, the said contract laborer went on board of said vessel Bessie Dollar at said Shanghai, and was by the defendants brought on. said vessel to the port of San Francisco, in the state of California, he working as a seaman on said vessel on her passage from said Shanghai to said port of San Francisco, at which said last-named place and on or about the 15th day of January, 1914, at said last-named place the defendants caused the said contract laborer to be discharged from said vessel, and he was by them discharged from service on her, and thereafter and upon the same day the defendants herein other than defendant James Abernethy, in pursuance of the purpose for which they had brought the said contract laborer from said Shanghai, hired and employed him in the said port of San Francisco, and caused him to sign a contract of shipment before the United States shipping commissioner for the said port of San Francisco, on a voyage on said vessel described in said contract of shipment, as follows: 'From San Francisco, Cal., to Shanghai, China, and such other Asiatic ports as the master may direct, via Grays Harbor, Seattle, Wash., and such other ports on the Pacific Coast as the master may direct; final port of discharge shall be Shanghai, China.'

"That the Grays Harbor and the Seattle mentioned in said contract of shipment are each ports, to wit, seaports in the state of Washington. That after

the signing of such shipping articles or contract of shipment the said contract laborer went on board of said vessel Mackinaw in the employ of defendants other than said James Abernethy, at said Port of San Francisco, on or about the said 15th day of January, 1914, under and pursuant to his said hiring at said Shanghai, to work as a seaman on said vessel Mackinaw and worked on board of said vessel in the said port of San Francisco, for some days, and also on a voyage of said vessel from said San Francisco, to said Grays Harbor and at said Grays Harbor also worked on said vessel as a seaman and pursuant to his said hiring, and did and is now so performing labor on board of said vessel."

The complaint then alleges that the contract laborers were not exempted under the terms of the last two provisos contained in section 2 of the act in question. A demurrer to this, the second amended complaint, was sustained, without leave to amend, and the present writ of error was sued out to reverse a judgment dismissing the action.

H. W. Hutton, of San Francisco, Cal., for plaintiff in error.

Nathan H. Frank, of San Francisco, Cal., for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge (after stating the facts as above). No doubt, as contended by the plaintiff in error, the public and private vessels of every nation while on the high seas, and without the territorial limits of any state, are subject to the jurisdiction of the state to which they belong, and are in many respects considered a part of its territory. Crapo v. Kelly, 16 Wall. 610, 21 L. Ed. 430; Wilson v. McNamee, 102 U. S. 572, 26 L. Ed. 234. But it does not follow from this that a merchant vessel flying the American flag is a part of the United States within the meaning of the immigration laws, or that a sailor whose home is on the sea is a contract laborer within the purview of these laws. Taylor v. United States, 207 U. S. 120, 28 Sup. Ct. 53, 52 L. Ed. 130; United States v. Sandrey (C. C.) 48 Fed. 550; United States v. Burke (C. C.) 99 Fed. 895; Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226.

In Taylor v. United States, supra, the court said:

" 'Landing from such vessel' takes place and is complete the moment the vessel is left and the shore reached. But it is necessary to commerce, as all admit, that sailors should go ashore, and no one believes that the statute intended altogether to prohibit their doing so. The contrary always has been understood of the earlier acts, in judicial decisions and executive practice. If we reject the ambiguous interpretation of 'to land,' as we have, the necessary result can be reached only by saying that the section does not apply to sailors carried to an American port with a bona fide intent to take them out again when the ship goes on, when not only there was no ground for supposing that they were making the voyage a pretext to get here, desert, and get in, but there is no evidence that they were doing so in fact. Whether this result is reached by the interpretation of the words 'bringing an alien to the United States' that has been suggested, or on the ground that the statute cannot have intended its precautions to apply to the ordinary and necessary landing of seamen, even if the words of the section embrace it, as in Church of Holy Trinity v. United States, 143 U. S. 457 [12 Sup. Ct. 511, 36 L. Ed. 226], does not matter for this case. We think it superfluous to go through all the sections of the act for confirmation of our opinion. It is enough to say that we feel no doubt when we read the act as a whole."

In United States v. Sandrey, supra, the court said:

"As clearly appears, the act deals only with the importation of aliens under contract to labor and alien immigration. It is only with regard to alien immigrants that the act imposes duties upon the masters and agents of vessels, or provides penalties for the nonperformance of duties by such masters and agents. An alien immigrant to the United States is an alien who comes or removes into the United States for the purpose of permanent residence. Aliens composing crews of vessels visiting our seaports are in no sense immigrants, and, as a review of the statute as above shows, are in no wise affected by the law in question. With regard to them the said law imposes no duties nor penalties upon the masters and agents of vessels."

In United States v. Burke, supra, the court said:

"The legislation contained in the various statutes that have been passed relating to immigration is clearly directed against the immigration into this country of certain classes of persons, who come in with the intent to enter into and become a part of the mass of its citizenship or population. Immigration is defined to be the entering into a country with the intention of residing in it. The earlier statutes merely prohibit contract laborers being brought in. The later ones prohibit the bringing in of immigrants—persons who come into the country with the intention of remaining, of fixing a residence here, and who are calculated to become a charge upon the country, or who are unfit; on account of moral character, previous convictions of crime, or disease, to be admitted as citizens. Nothing in the scope of the statutes seems to contemplate, or can be rationally held to contemplate, the prohibition of the bringing within the country by vessels of their crews engaged under contract made out of the country, to labor on the vessels while approaching and while in the ports of this country, and to sail again with the vessels from this country."

And after reviewing the different sections of the Immigration Act the court continued:

"A consideration of the whole legislation on the subject of immigration, of the circumstances surrounding its enactment, and of the unjust results which would follow from giving such meaning to it as is here claimed for it, makes it unreasonable to believe that Congress intended to include a case like the present one. My opinion is that these statutes do not contemplate the exclusion of the crews of vessels which lawfully trade to our ports, and that they do not, in spirit or in letter, apply to seamen engaged in their calling, whose home is the sea, who are here to-day and gone to-morrow, who come on a vessel into the United States with no purpose to reside therein, but with the intention, when they come, of leaving again, on that or some other vessel, for the port of shipment or some other foreign port in the course of her trade. To hold that these statutes apply to aliens comprising the bona fide crews of vessels engaged in commerce between the United States and foreign countries would lead to great injustice to such vessels, oppression to their crews, and serious consequences to commerce."

In an opinion to the Secretary of the Treasury, Acting Attorney General Beck quoted at length from the decision in United States v. Burke, supra, and said:

"Were I at liberty to disregard this authoritative interpretation of the immigration statutes, I would feel constrained to say that the reasoning of Judge Toulmin seems to me entirely sound, and that it would be injurious to our commerce, and therefore to the public interests, to hold broadly and without exception that seamen as a class are within the purview of the immigration statutes. It is true that Congress has not excepted them from the express language of these statutes, but in the practical administration of these laws they have always been excepted, and their inclusion in the class of alien immigrants would lead to consequences so destructive to legitimate commerce that such inclusion can fairly be disregarded as beyond the intention of Congress." 23 Ops. Attys. Gen., 521.

The rules adopted and promulgated by the Department of Labor, which is charged with the administration and enforcement of the immigration laws, are in entire harmony with these views.

For these reasons, the demurrer was properly sustained, and the judgment of the court below is affirmed.