## THE MANUEL ARNUS.
### No. 286.

Circuit Court of Appeals, Second Circuit.
March 11, 1935.

Martin Conboy, U. S. Atty., of New York City (Mary R. Towle, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The steamship Manuel Arnus arrived at New York on November 12, 1926, from Barcelona and other Spanish ports, having on board an alien stowaway. Upon the arrival of the vessel the stowaway was manifested on form 500 B of the United States Immigration Service, and the manifest was delivered to Immigrant Inspector King, who had boarded the vessel to inspect passengers and crew. Inspector King immediately served upon the chief officer of the vessel a written notice to deliver the alien at the immigrant station on Ellis Island. The alien was never delivered at Ellis Island, but escaped from the ship at the Port of New York. By reason of these facts the United States claims that a penalty of $1,000 was incurred under section 27 of the Immigration Act of 1924 (8 USCA § 146), which makes it "the duty of every person * * * bringing an alien to * * * the United States, to prevent the landing of such alien in the United States at any time or place other than as designated by the immigration officers." Its libel was filed to collect such penalty, but the District Court dismissed it upon counsel's opening statement, as though upon demurrer to evidence, on the ground that the statute was inapplicable because in the case of a stowaway the shipowner was not "bringing an alien" to the United States within the meaning of the statute.

The decision below was rested upon the authority of Taylor v. United States, 207 U. S. 120, 28 S. Ct. 53, 54, 52 L. Ed. 130, Dollar S. S. Line v. Elting, 51 F.(2d) 1035 (C. C. A. 2), and The Habana, 63 F.(2d) 812 (C. C. A. 2). We do not regard them as decisive of the question raised by the case at bar. The Taylor Case dealt with a sailor deserting while on shore leave. In construing the similar statute there invoked (section 18 of the Immigration Act of March 3, 1903, 32 Stat. 1217), the Supreme Court, through Mr. Justice Holmes, held that the section "does not apply to sailors carried to an American port with a bona fide intent to

take them out again when the ship goes on." This court adopted the same reasoning with respect to certain sections of the Immigration Act of 1924 as applied to through passengers in transit landing at an American port. Dollar S. S. Line v. Elting, and The Habana, supra, the last-mentioned case involving the very section that is now under consideration. The theory underlying the Supreme Court's opinion and our own decisions is that a carrier does not "bring to" the United States, in the sense of the statute, an alien whom he intends, and has every reason to expect, to take out again when the ship moves on. In the case of a stowaway discovered en route, the carrier's intentions and expectations are very different. It would be inexpedient to turn back in order to return the stowaway to the port at which he came aboard, and he cannot be dropped overboard; so the carrier intentionally brings him to an American port with the knowledge that the stowaway's purpose is to land and stay, and he makes no proof of an intention to take him out when the ship moves on. The advantage to commerce of granting shore leave to sailors and of allowing through passengers to land, considerations which were stressed in the prior decisions, finds no counterpart in the case of a stowaway. There is no reason why he should be allowed to go ashore. None of the considerations which led to the construction that it was not the purpose of the statute to impose duties on a carrier who brings an alien seaman or passenger here merely in transit is applicable to a carrier who knowingly brings in an alien stowaway. If the alien is not in transit, so far as the carrier can honestly see, it is reasonable to impose the duty to land him at a place designated by immigration officials. Otherwise the carrier may disclaim all duty to co-operate with the authorities in keeping the alien out, which would be a most unreasonable gloss to put upon the statute in contradiction of its express words. No reported decision has been found to the contrary of the view we have expressed. Cunard S. S. Co. v. Stranahan, 134 F. 318 (C. C. S. D. N. Y.), it is true, contains contrary dicta but the decision itself is plainly distinguishable. There the statute under consideration was section 9 of the Act of March 3, 1903, 32 Stat. 1215, which presupposes a medical examination at the port of embarkation, and so cannot reasonably be construed to apply to stowaways. In so far as the opinion suggests that the carrier does not "bring in" a stowaway, we cannot agree with it. Moffitt v. United States, 128 F. 375 (C. C. A. 9), is also distinguishable, since the section there invoked was construed to relate only to immigrants, and the alien was not an immigrant. In United States v. Sandrey, 48 F. 550 (C. C. E. D. La.), the stowaway on being discovered was duly enrolled as a member of the crew, and that was held to establish his status as a seaman.

For the reasons above stated, we think stowaways are to be differentiated from sailors and through passengers with respect to the statute under consideration.

The decree is reversed, and the cause remanded for further proceedings.