MATTER OF M/V "SOUTH AFRICAN VICTORY"

In Fine Proceedings

NOL-10/61.284

*Decided by Board February 13, 1967*

Since an intent to conceal one's self aboard a United States-bound vessel for the purpose of obtaining passage thereon is an element essential to constituting an alien stowaway within the meaning of section 273(d), Immigration and Nationality Act, where the two aliens involved, longshoremen by occupation, boarded the ship in Colombia in search of food, thereafter fell asleep until the vessel was at sea, and the evidence demonstrates they lacked any intention whatsoever of obtaining passage to the United States, fine does not lie under section 273(d) of the Act, notwithstanding upon arrival they were presented for inspection as stowaways.

IN RE: M/V "South African Victory," which arrived at the port of New Orleans, La., from foreign, via another United States port, on August 17, 1966. Aliens involved: Raul Sanchez-Pena and Isaic Aristobulo Mendoza-Lopez.

ON BEHALF OF APPELLANT:    J. Dwight LeBlanc, Jr., Esquire
Chaffe, McCall, Phillips, Burke, Toler & Hopkins
1500 National Bank of Commerce Building
New Orleans, Louisiana 70112

This appeal is directed to an administrative penalty of $2000, $1000 as to each of the aliens named above, which the District Director at New Orleans has ordered imposed on Hansen & Tideman, Inc., as agents for the vessel. The specific violation charged is failure to detain the above-named aliens aboard the vessel, as stowaways, pursuant to an immigration officer's order to do so.

It appears from the record before us that the following material facts exist without substantial controversy. The above-named aliens, natives and citizens of Colombia, are longshoremen by occupation. They boarded the ship in Colombia in search of food, and thereafter fell asleep in a rope locker. They did not awaken until the ship was well at sea, when they were discovered by a crewman. Following their discovery, an arrangement was made whereby they worked as deck boys for their meals.

The aliens were still aboard when the vessel made its first United States port call at Mobile, Alabama, on August 14, 1966. They were then and there presented to the boarding immigration officer by the master for inspection, as stowaways. The boarding immigration officer ordered them detained on board the vessel and deported from the United States thereon, as stowaways, serving appropriate notices to that effect (Forms I-259) upon the vessel's master and agents.

While the vessel remained at the port of Mobile, the two aliens were locked in the ship's hospital and professional guards were stationed outside it, with the sole duty of preventing the escape of the aliens. This same arrangement was put into effect after the vessel had proceeded coastwise to New Orleans, *ante*. Nevertheless, while the vessel was still in that port, and specifically at approximately 10:45 p.m. on August 17, 1966, the aliens succeeded in breaking the lock on the door of the ship's hospital and going ashore in the United States, while the professional guard was on watch at the porthole on the other side of the ship's hospital.

The escape was reported to the Immigration Service approximately one-half hour after it occurred. One hour later, border patrol officers of the Immigration and Naturalization Service took the aliens into custody in a bar in the dock area. They were subsequently remanded to the carrier's custody aboard the vessel and removed from the United States thereon.

The District Director's decision to impose the fines herein is predicated on the following factors:

(1) the master presented the aliens to the boarding immigration officer for inspection, as stowaways;

(2) that official ordered the aliens detained on board and deported, as stowaways;

(3) the aliens did escape from the ship;

(4) it is unnecessary in fine proceedings such as this to go beyond the record, or to delve into the thoughts of the aliens involved when they hid themselves aboard the vessel; and

(5) it is immaterial that criminal prosecution of the aliens as stowaways was declined by the appropriate United States Attorney.

We, however, conclude that the fines have been improperly ordered imposed, for the reasons hereinafter set forth.

It has been judicially held "* * * a 'stowaway' * * * is one who conceals himself aboard an outgoing vessel for the purpose of obtaining free passage."[1] The courts have also ruled that "* * * It is quite clear that * * * the word 'stowaway' is used to indicate one who steals his passage * * *."[2] Likewise, it has been judicially stated that to justify

---

[1] *Candreva* v. *Smith*, 27 F.2d 642.

[2] *D'Amato* v. *Williams*, 193 F. 228.

the conviction of a person for stowing away on a vessel it is necessary to establish intent to go and remain on board without paying for a ticket, and that an accidental remaining aboard does not suffice.[3]

In our opinion, the foregoing cases establish that, under the general principles of maritime law, a stowaway is one who conceals himself on board a vessel about to leave port in order to obtain passage, and that when he lacks such intent he is not properly classifiable as a stowaway.[4] On this point, while it may well be true that in cases involving immigration laws a somewhat different rule may prevail, e.g., a stowaway who is signed on the vessel's articles by the master would be regarded as a seaman,[5] it must also be noted that such exceptions occur only where definitions peculiar to the immigration laws are involved.[6] We find no such distinguishing feature present in the instant case.

On the facts, the occupation of these aliens was that of longshoremen, so that they cannot reasonably be held to fall within the provisions of section 101(a) (15) (D) of the Immigration and Nationality Act (8 U.S.C. 1101), which reads:

The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrants—an alien serving in good faith as such in any capacity required for normal operation and service on board a vessel (other than a fishing vessel having its home port or an operating base in the United States) or aircraft, who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft.

Nor do we think they can logically be held to fall within the terms of section 101(a) (10) of the Immigration and Nationality Act (8 U.S.C. 1101) defining the term "crewman" as meaning:

a person serving in any capacity on board a vessel or aircraft.

The reason is that, in view of the circumstances under which the aliens were aboard this vessel, and absent evidence that they were signed on the ship's articles (and there is none here), they cannot properly be classified as members of the ship's crew or its company;[7] and they certainly were not engaged as such. Rather, in the eyes of the law, they were properly classifiable as trespassers on board the vessel at their own peril.[8]

In view of the foregoing, we are satisfied that the element essential

---

[3] *United States v. Russo*, 172 F.2d 553.
[4] Norris, *The Law of Seamen*, Vol. 1, sec. 7, pp. 8 & 9.
[5] *United States v. Sandrey*, 48 F. 550.
[6] See footnote 4, *ante*.
[7] Norris, *The Law of Seamen*, Vol. 1, secs. 1 & 5.
[8] The case of the *Western World. Malley v. Hupper*, 31 F. Supp. 340.

to constitute an alien a stowaway under section 273 (d) of the Immigration and Nationality Act (8 U.S.C. 1323) is the intent on the part of the alien involved to conceal himself aboard a vessel bound for the United States for the purpose of obtaining passage thereon. The evidence of this record, however, definitely demonstrates that such intent was not present in this case, it being conceded that the aliens involved were longshoremen by occupation who boarded this ship in search of food and thereafter fell asleep until the vessel was out at sea; and that they lacked any intention whatsoever of obtaining passage to the United States, free or otherwise. Therefore, we conclude that the charge that the master and/or the agents failed to detain the stowaways on board was improperly posited.

Contrary to the District Director, we find it immaterial that these aliens were presented by the master to the boarding immigration officer for inspection as stowaways, and that the immigration officer ordered them detained on board and deported as such. The reason is that it is substance rather than form which is controlling in such situations. To illustrate this point, we need only refer to a prior precedent decision of ours wherein an alien arriving in the United States aboard a vessel was presented for inspection with a crew list showing him to be a "workaway"; his name was transferred to a separate passenger manifest, pursuant to instructions of the inspecting immigration officer; the latter then admitted the alien (who was in possession of a B-2 visa) as a temporary visitor; and the alien was thereafter found eligible for adjustment of his status to that of a permanent resident, under section 245, Immigration and Nationality Act (8 U.S.C. 1255).[9]

We do not necessarily disagree with the District Director's views that the failure of the appropriate United States Attorney to prosecute these aliens criminally as stowaways, ostensibly under the provisions of 18 U.S.C., is not determinative in these proceedings. The only comment required on this aspect of the case is that, in substance, said statute defines a stowaway as a person who boards or secretes himself on a vessel with the intent to obtain transportation; and that the evidence of this record does not establish the existence of such intent. The only other point worth noting, in this connection, is that the element of intent not to pay for the transportation has been omitted from the statute as being unnecessary, for the obvious reason that payment for the transportation would have the effect of purchasing the master's consent.

In conclusion, it is our opinion that there are certain rules of statutory construction which have a specific and definite bearing on the

---

[9] *Matter of Q—C—*, A-12774443, B.I.A., 1/14/64; Int. Dec. No. 1516.

disposition of this matter. In the first place, fine statutes such as this must be strictly construed in all respects because of their quasi-penal nature.[10] Secondly, carriers must be favored in the construction of such statutes, as a matter of law; and mere convenience of enforcement cannot justify a strained construction of the statute.[11] In this latter connection, there would appear to be no sound basis for the possible argument that our ruling herein will create an enforcement problem, because of the availability of other sanctions found in the presently existing framework of the law.[12]

On the basis of all the foregoing, it is our conclusion that these fine proceedings based on the charge that the master and/or the agents failed to detain stowaways on board the vessel necessarily fall. We so hold.

**ORDER:** It is ordered that the appeal be sustained and that the fines be not imposed.

---

[10] *Miller* v. *Robertson*, 266 U.S. 243.

[11] *United States* v. *J. H. Winchester & Co.*, 40 F.2d 472.

[12] See sections 237 and 271 of the Immigration and Nationality Act (8 U.S.C. 1227 and 1321).