## MATTER OF M/T "RAJENDRA PRASAD"

### In Fine Proceedings

### SFR–10/28.340

### *Decided by Board March 30, 1979*

(1) For purposes of an administrative fine proceeding under section 273 of the Immigration and Nationality Act, 8 U.S.C. 1323, there are essentially two categories of persons considered passengers: (a) those who have paid for passage and have a contract with the carrier and (b) all those who do not fall into the category delineated by the terms "the master, the crew and the owner and his family and servants."

(2) All passengers come within the fine provisions of section 273 of the Act, not merely paying passengers. *Matter of S.S. Greystoke Castle and M/V Western Queen*, 6 I. & N. Dec. 112 (BIA 1954; A.G. 1954); *Matter of S.S. Saint Tropez*, 7 I. & N. Dec. 500 (BIA 1957), modified.

(3) The provisions of section 273(b) of the Act, 8 U.S.C. 1323(b), calling for an assessment against the offending transportation company equal to the passage money paid by a visa-less passenger is a means of reimbursing a passenger, and does not serve to set a limit on the definition of the term "passenger" under this section. *Matter of S.S. Greystoke Castle and M/V Western Queen*, 6 I.& N. Dec. 112 (BIA 1954; A.G. 1954), modified.

(4) Where the sole fuction of an alien is to contribute to the morale of the ship's officers, but not to the functioning of the vessel itself, and the aliens have no background as seamen, no labor obligation to the vessel, are not paid as crewmen, and would not be classifiable as crewmen under maritime law, they must be considered passengers for purposes of section 273 of the Act.

(5) The spouses and children of ship's officers are not crewmen for purposes of section 273 of the Act, because they do not contribute to the functioning of the vessel itself, and the ship is amenable to fine because the aliens were brought into the United States without the visa required of passengers, into which category they fall.

In re: M/T "RAJENDRA PRASAD", which arrived in the United States at the port of San Francisco, California, from foreign, on April 4, 1977. Aliens involved: SADHANA DABRAL, VIJAYA KAUL, VEENA MODI, AMRIT VIVEKANAND, KAMADA R. VIVEKANAND, and NEROO WALIA.

BASIS OF FINE: Act of 1952—Section 273(a) and (b), [8 U.S.C. 1323(a) and (b)]

ON BEHALF OF CARRIER:   Charles M. Haid, Jr., Esquire
                        Lillick, McHose & Charles
                        500 Sansome Street
                        San Francisco, California 94111

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated July 25, 1977, the District Director found that the M/T "Rajendra Prasad" was subject to a $6,000 fine for having brought

six aliens into the United States without valid unexpired visas. The shipping company appeals from this decision. The appeal will be dismissed.

The essential facts in this case are not in dispute. On April 4, 1977, the ship, owned by the Shipping Company of India, arrived at San Francisco, California, from Yokohama, Japan. On board, other than the usual crew members, were five women, the spouses of officers serving on the ship, and the son of the ship's master. The six aliens were listed on the "passenger list" and, according to the District Director, were presented to the immigration inspector as such. The six aliens did not have valid visas in their possession. They were paroled into the United States and left with the ship on May 6, 1977. On April 8, 1977, a "Notice of Intention to Fine Under Immigration and Nationality Act" was issued by the District Director. In this notice, he informed the ship's agents of his intention to levy a $6,000 fine under section 273(b) of the Immigration and Nationality Act, 8 U.S.C. 1323(b), on the ground that the "Rajendra Prasad" had brought six alien passengers into the United States without the required visas. In response to this notice, the ship's San Francisco agent stated that the six aliens involved were "noted as passengers on a separate listing presented to the inspector. . . ." He indicated that the aliens may have been so listed because the ship's agent in Yokohama may have misinterpreted the immigration regulations. A reevaluation of the fine was requested. After considering the information available, the District Director concluded that the vessel was liable to fine in the amount of $6,000 because the aliens had come as passengers without valid unexpired visas.

On appeal, it is contended that the essential issue is the status of the aliens involved. Counsel for the "Rajendra Prasad" argues that they should be considered "crewmen," not passengers, and as crewmen that they were not required to have visas, and did not come within the fine provisions of section 273 of the Act, 8 U.S.C. 1323.

Section 273 of the Act states in part:

(a) It shall be unlawful for any person, including any transportation company, or the owner, master, commanding officer, agent, charterer, or consignee of any vessel or aircraft, to bring to the United States from any place outside thereof (other than from foreign contiguous territory) any alien who does not have an unexpired visa, if a visa was required under this Act or regulations issued thereunder.

(b) If it appears to the satisfaction of the Attorney General that any alien has been so brought, such person, . . . shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien so brought. . . .

Part (c) of this provision provides for remission or refund of the fine if it was not known and could not have been ascertained by the exercise of

reasonable diligence that the individual involved was an alien and that a visa was required.

This section of the Act has been interpreted as applying only to passengers. *Matter of S.S. Saint Tropez*, 7 I. & N. Dec. 500 (BIA 1957). Stowaways and crew members have been specifically excluded as persons whose presence would subject the vessel to fine proceedings under section 273 of the Act. *Matter of S.S. Greystoke Castle and M/V Western Queen*, 6 I. & N. Dec. 112 (BIA 1954; A.G. 1954); *Matter of S.S. Saint Tropez, supra.*

This being the case, it is clear that if the six aliens were "crewmen", they did not come within the the provisions of the section. Conversely, if they were "passengers", they did. Unfortunately neither of these two terms is free of ambiguity. In the *International Maritime Dictionary*, 5th edition (Ed. de Kerchove), a passenger is defined as:

> One who travels on a ship by virtue of a contract with the carrier and who is paying a fare. The term "passenger" includes any person carried in a ship other than the master, the crew, and the owner and his family and servants.

This definition sets up two categories of persons considered passengers. The first is those who have paid for passage and have a contract with the carrier. The second category encompasses all those who do not fall into *other* defined classes. Here the aliens have not paid for their transportation and have no apparent contract with the shipping company. They do not therefore fall into the first category of "passengers".[1] That still leaves the second category, those persons who are not the "master, the crew and the owner and his family and servants."

The defense that has been interposed is that the aliens were "crewmen" and did not therefore come within the section 273 of the Act. As defined in section 101(a)(10) of the Act, 8 U.S.C. 1101(a)(10), the term "crewman" means a "person serving in any capacity on board a vessel or aircraft." A second section, 101(a)(15)(D), dealing with nonimmigrant classification of bona fide crewmen refers to "an alien crewman serving in good faith as such in any capacity required for normal operation and service on board a vessel. . . ." As this Board has previously interpreted these provisions, persons as varied as shipboard dancers and part-time chefs have come within the term "crewman". *Steamship Nassau*, 1957 AMC 877; *Matter of Marsden*, unreported A14 692 553 (BIA 1966). To fit within this definition, a person must have a function on board the vessel. On appeal, counsel contends that the aliens' function is

---

[1] *Greystoke Castle* and *Saint Tropez, supra*, could be interpreted to mean that only *paying* passengers come within the provisions of section 273 of the Act. For reasons apparent in this decision, we consider such an interpretation incorrect and hold here that *all* passengers come within this section. We therefore recede from the position taken in these cases.

to enhance the ship's morale and to improve labor relations. Under this interpretation, the society, comfort and consortium provided by the wives of the officers are an "aid to navigation". The argument can then be reduced to the simple formula that all those who "aid in navigation" are "crewmen".

This contention has also arisen in various contexts in regard to other statutes. Courts have generally set forth three elements in defining a "member of a crew", the same criteria proposed by counsel for the vessel. These criteria include: (a) that the ship be in navigation; (b) that there be a more or less permanent connection with the ship; and (c) that the worker be aboard permanently to aid in navigation. *McKie* v. *Diamond Marine Co.*, 204 F.2d 132, 136 (5 Cir. 1953); *Harney* v. *William M. Moore Building Corp.*, 359 F.2d 649, 654 (2 Cir. 1966). As is so often the case, though, this apparently simple formula in theory is far from simple in application. In the cases cited above, the questions raised concerned the meaning of the term "member of crew" within the context of the Jones Act, 36 U.S.C. 688. In other contexts, the results could be different. As the Supreme Court has stated, whether or not a person is a member of a crew turns on questions of law and fact and "does not have an absolutely unvarying legal significance." *South Chicago Coal and Dock Co.* v. *Bassett*, 309 U.S. 251, 258 (1940).

In the case at hand, it has not been alleged that the six aliens are crewmen in the traditional sense of those who have signed the ship's articles. See *South Chicago Coal and Dock Co.* v. *Bassett, id.*, at 257; *International Maritime Dictionary, supra*. The contention is essentially that the aliens' presence contributes to the functioning of the vessel's mission, but not to the functioning of the vessel itself. See *Harney* v. *William M. Moore Building Corp., supra*. It is clear that they have no background as seamen and that they have no labor obligation to the vessel. They are not paid as crewmen and probably do not associate with the crew members or sleep in the crew quarters. It is clear that they would not be classifiable as crewmen under maritime law. *Matter of Quintero-Correa*, 11 I. & N. Dec. 343 (BIA 1964). Their presence on board the ship is attributable to the shipping company's interest in insuring that the ship is run smoothly through providing the officers companionship. While this is a commendable policy, it is an aid to the shipping company's labor relations, not to the ship's functioning *per se*. Having had no training in any type of shipboard operation, and not being expected to provide either labor or expertise to the ship's running, we find no basis on which they can be classified as "crewmen". This is even more the case when their personal status is considered. There is nothing to prevent them leaving the ship when they please. This is not the case with true crew members who have contractual obligations to remain on board until their service expires or they are

otherwise released by the ship's master.[2] This means that the aliens do not in fact have a more or less permanent connection with the ship. See *South Chicago Coal and Dock Co.* v. *Bassett, supra.*

In reaching this conclusion, we are not unmindful of counsel's contention that fine statutes are to be strictly construed. As he has correctly pointed out, carriers must be favored in the construction of such statutes, and mere convenience of enforcement cannot justify a strained construction. *Matter of M/V "South African Victory,"* 12 I. & N. Dec. 253 (BIA 1967). In this case, however, the issue is not primarily that of strict construction of the statute. We agree that section 273 of the Act only applies to "passengers". The issue here, however, is the definition of "passenger" and "crewman". To contend that only those who pay for passage should be considered "passengers" would be to accept an interpretation that would emasculate the statute. Section 273(b) does, it is true, call for an assessment equal to the passage money paid by a visa-less alien passenger to the offending transportation company. We see this though as a means of reimbursing a passenger who has been inconvenienced by the negligence of the company and who will, in most cases, have made a fruitless journey at no small expense. This provision, therefore, has nothing to do with setting the limits for the definition of "passenger" under section 273(b) of the Act.[3] It is clear that such an interpretation could lead to an anomalous situation in which friends or companions or children of crew members who are not required to pay for their transporation would be placed in a favored category by the ship's master or shipping company. We note that earlier, on January 19, 1977, three of the aliens were granted waivers of the nonimmigrant visa requirement. They were then on notice such a visa was required.

Taking the purpose of these provisions into account then, along with the criteria used in deciding whether a person is a passenger or a crewman, we are satisfied that both logically and legally the six aliens here were not "crewmen" and that they have to be considered passengers brought without valid unexpired visas. The vessel is thus subject to the fine provisions of section 273(b) of the Act. As there has been no showing that the ship's master or owners or other responsible persons did not know or could not have "ascertained by the exercise of reasonable diligence" that a visa was required there is no basis on which the

---

[2] In this regard, it could be added that "Unlike men employed on land, the seaman, when he finishes his day's work, is neither relieved of obligations to his employer nor wholly free to dispose of his leisure as he sees fit." *Waterman SS Corp.* v. *Jones,* 318 U.S. 724, 731, 732 (1943).

[3] On this point of statutory interpretation we also disagree with *Greystoke Castlo, supra.* We withdraw from the position expressed there concerning the significance of the shipping company's obligation to reimburse passengers brought without visas.

fines can be remitted or refunded. Section 273(c) of the Act, 8 U.S.C. 1323(c). The appeal will accordingly be dismissed.

**ORDER:** The appeal is dismissed.