**Chester OUZTS, Plaintiff,**

v.

**A. P. WARD & SON, Inc., Defendant.**

**Civ. A. No. 699.**

United States District Court
N. D. Florida, Pensacola Division.

Dec. 21, 1956.

R. P. Warfield, Fisher & Hepner, Pensacola, Fla., for plaintiff.

**734**

Yonge, Beggs & Lane, Pensacola, Fla., for defendant.

DE VANE, Chief Judge.

In this case plaintiff seeks in count one to recover damages under the Jones Act, 46 U.S.C.A. § 688, for injuries sustained by him because of alleged negligence of the defendant and in the second count to recover maintenance and cure for these injuries for the time plaintiff was incapacitated.

Plaintiff claims that he received a serious back injury resulting from lifting a heavy battery, which was located in an inaccessible place aboard the tug "Philip"; that the defendant failed to furnish proper help and assistance to perform this work and was thereby negligent in the purview of the Jones Act. Plaintiff claims that he sustained a herniated intervertebral disc and is permanently injured and disabled. To this count of the complaint defendant has interposed two defenses. First, it denies it was guilty of any negligence which possibly contributed to plaintiff's injury and second, that plaintiff is precluded from pressing this action, contending that he has released the defendant from liability by reason of having elected to receive voluntary benefit payments under the Florida Workmen's Compensation Act, F.S.A. § 440.01 et seq.

The evidence touching the question of negligence is somewhat complicated and because of the decision the Court has reached upon the question of negligence, only so much of this evidence as is pertinent thereto will be incorporated in this Memorandum-Decision.

Plaintiff was not an ordinary seaman but rather the Assistant Port Engineer for the defendant. He generally was not assigned to any vessel but performed or supervised general engineering work on all the vessels in defendant's fleet. Because business was slack just prior to the alleged injury, he had been assigned to service as Chief Engineer on the tug Charles Boys. However, he continued to hold the position of Assistant Port Engineer and receive the compensation for that position and his alleged injury occurred while he was performing a duty in that capacity, to-wit, changing a battery on the tug Philip. The battery in service was dead and he exchanged it with one from the engine bank of batteries, thus providing a charged battery for the auxiliary and placing the dead battery in a position to be charged from the running of the main engine of the vessel.

Plaintiff alleges and offered proof to the effect that the services of two men were needed to make this change and that he called upon his superior to furnish an assistant to help him in making the change and that his superior failed in this regard. He testified, however, that he went ahead on his own account and made the change and did not on his own account attempt to secure the assistance of any one else, although under the authority he held in the position he occupied he was authorized to do so. The evidence further shows that the accident and injury occurred when plaintiff's left foot slipped from an oil pipe on which he had elected to place it while removing the battery. According to the evidence, he was standing straddle of a generator with his right foot on firm floor plates and his left foot on the oil pipe because the floor on this side was too low for him to reach. It was ten inches lower than the floor on the opposite side. Plaintiff testified that he was lifting the battery with one hand when his left foot slipped off the pipe and dropped ten inches to the floor, causing his body to jerk with resulting strain or injury to his back.

A person of plaintiff's knowledge and long experience certainly should have known better than to risk his safety in making the change by placing his foot on a pipe when he was aware that he was going to have to lift the battery to move it out of position. He could have so readily made his footing firm on that side as well as on the other side and his failure to do so was his own negligence, which was the proximate cause of this injury.

The Jones Act recognizes that comparative negligence is applicable in cases of this kind, but the Court is unable to find any basis for charging defendant with negligence. To hold that the defendant owed to the plaintiff the duty to supervise his work and see he would perform the work safely would be carrying the law of contributory negligence a little too far. Every employer has the right to assume that an experienced employee will look out for his own safety and will not commit acts of negligence on his part that will cause him injury. Vileski v. Pacific-Atlantic S. S. Company, 9 Cir., 163 F.2d 553.

Plaintiff stands no better on his claim for maintenance and cure. In the first place plaintiff was injured on August 15, 1954. He continued to perform his duties as Chief Engineer on the Charles Boys from that date until September 4, 1954, when he first went to see a physician. His employer sent him to see the local public health doctor (Dr. Hoyt) who recommended he enter the marine hospital, but this he refused to do. Instead, he went to see his own personal physician who put him in Baptist Hospital. This Court has consistently held in other similar cases that refusal of maritime hospital care where recommended by a public health physician bars any claim for maintenance and cure. The Court again so holds in this case.

There is a further reason for denying plaintiff's claim for maintenance and cure in this case. While in the Baptist Hospital plaintiff elected to receive the equivalent of workmen's compensation from the defendant's insurance carrier. Then following a period of seven months, in which plaintiff several times changed doctors, contacted a total of seven doctors, incurred medical and doctors' bills of $468.86, which defendant's insurance carrier paid, and received himself a total of $1,085 in weekly compensation checks of $35 each from the insurer. On March 30, 1955, Dr. W. C. Hannon, a recognized orthopedist in Mobile, Alabama, who had been treating plaintiff, wrote the insurer recommending an operation. Plaintiff refused to undergo this operation which the insurer stood ready to provide and based upon his refusal, the insurer discontinued the weekly compensation and this suit followed.

Assuming plaintiff is entitled to maintenance and care despite his refusal to accept hospitalization, the amount paid by defendant's insurer exceeds the amount plaintiff could lawfully recover under the Jones Act and the Court holds that plaintiff is not entitled to recover double compensation on this account. A final judgment will be entered herein in conformity with this Memorandum-Decision.