Samuel J. CLOWERS, Plaintiff,

v.

TIDEWATER–RAYMOND–KIEWIT, a joint venture, Defendant.

Civ. No. 4577.

United States District Court
E. D. Virginia,
Norfolk Division.

Jan. 21, 1965.

Kelsey & Rabinowitz, Ralph Rabinowitz, Norfolk, Va., for plaintiff.

Jett, Sykes & Berkley, Roy L. Sykes, Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

The defendant has filed a plea to the jurisdiction, a motion to quash service of process, and a motion to dismiss. At the hearing on December 23, 1964, attended by the official reporter, the Court advised counsel that it would treat the motion to dismiss as a motion for summary judgment and would consider the pleadings and exhibits, including a transcript of the proceedings before the Deputy Commissioner, United States Department of Labor, Bureau of Employees Compensation, on April 17, 1963, in support of and

in opposition to said motion. The transcript of the hearing of December 23, 1964, is not available but, while not of significance, certain concessions of fact were made at that time.

The defendant is a joint venture[1] which constructed the Chesapeake Bay Bridge-Tunnel, a valuable engineering contribution connecting the southern tip of the Eastern Shore of Virginia with the Cities of Norfolk, Virginia Beach, and other areas. In the course of this work it was necessary for defendant to provide passenger boats for the purpose of transporting workmen from land to the project and return. Since the project consists of approximately 17 miles of over-water trestles, bridges and under-water tunnels, it was, of course, impossible to get the workmen to designated areas other than by a passenger launch.

The defendant owned and operated the vessel DIANE on November 24, 1962. It transported workmen to various areas at approximately 7:30 a. m. The plaintiff was one of several workmen so transported. He was a carpenter. Plaintiff was paid $2.50 per day for travel time which fact, standing alone, is a strong indication that plaintiff was not a seaman on the vessel. On the day in question plaintiff was due to work on the "Big Monster"—a specialized piece of equipment which travels over piles in advance of any completed portion of the trestle and is used for the purpose of capping the piles. In jumping from the boat to the piling during rough water, plaintiff fell and was injured.

Initially the defendant reported the accident under the Virginia Workmen's Compensation Act. Plaintiff consulted with a firm of attorneys who devote substantially their entire practice to the field of maritime negligence law. The attorneys concede that they were aware of the provisions of the Longshoremen's and Harbor Workers' Compensation Act and particularly that portion of the Act excluding coverage for seamen and members of the crew of a vessel. Recognizing that plaintiff was a harbor worker engaged in a maritime activity, the attorneys for plaintiff caused a claim to be executed by plaintiff on January 28, 1963,[2] on a regular form entitled "Employee's Claim for Compensation" as provided by the Bureau of Employees' Compensation. He refers to his work as that of "maritime carpenter" and states that he was "going to work" when injured. His description of the accident in which he sustained a "crushed and fractured right foot" as stated on the form, is as follows:

> "While in the process of stepping from the vessel DIANE to a rope ladder on a piling, my right leg was crushed between the vessel and the piling."

The various preliminaries leading up to the hearing before the Deputy Commissioner are of no importance. During the course of the hearing plaintiff testified that his only connection with the boat was to ride in same as a passenger, except that, on rare occasions, he assisted in throwing the rope around the pile and tying it. This only took place on a couple of nights when no deck hand was available and was to enable the workmen to get ashore with greater rapidity. There is no contention that plaintiff assisted in the operation of the DIANE in any degree on the day in question.

The Deputy Commissioner, correctly we think, held that coverage was afforded under the Longshoremen's and Harbor Workers' Compensation Act. He made an award which was fully paid by defendant's compensation insurance carrier long prior to the filing of this action.

On March 6, 1964—after receiving all possible benefits under the aforesaid Act —plaintiff filed a civil action in this Court under the Jones Act, 46 U.S.C. §

---

1. The action was not properly maintained and, if pressed, the motion to quash would probably be sustained. The Court assumes that the defendant abandons this motion.

2. The claim form is dated January 28, 1962. It is conceded that the year stated should be 1963.

688 et seq. He alleges that he served as a deck hand on defendant's vessel DIANE and that, as a result of defendant's negligence, plaintiff was injured. His initial complaint did not even contain an ad damnum clause. After defendant filed its various motions which have heretofore been noted, plaintiff filed an amended complaint claiming the sum of $75,000.00 and clarified his original complaint by stating that the action was maintained under a first cause of action as a seaman under the Jones Act, but if not so determined, plaintiff alleged that any worker rendering maritime services may maintain an action at law against an employer engaged in maritime employment. He adds, as an additional ground for relief, the allegation that the DIANE was unseaworthy.

This Court—and presumably other courts as well—are repeatedly being called upon to pass upon cases wherein harbor workers are injured, receive in full the benefits under the Longshoremen's and Harbor Workers' Compensation Act, and then proceed to sue under the Jones Act claiming that they are seamen. We recognize that such a right may exist under certain circumstances, especially where the payments are voluntarily made under the Act. Lawrence v. Norfolk Dredging Company, E.D.Va., 194 F.Supp. 484. The practice, at best, brings about a condition of circumspection, particularly where the claimant is represented by able and experienced attorneys in the maritime field, with knowledge of the fact that seamen are not entitled to any award under the Act and are expressly excluded from coverage. During the course of hearing before the Deputy Commissioner, plaintiff was asked:

"Q. Have you ever been employed as a crew member on any vessel?

"A. No, sir."

Claimant's attorney objected to the foregoing question and the objection was sustained, the Deputy Commissioner stating that it was not pertinent to the issue.

In the manner in which the question was phrased, the Deputy Commissioner was correct, but as applied to the DIANE it would have been very pertinent as it touches upon the possible jurisdiction under the Act. By permitting questions as to any claims relating to seamen status, it may assist in diminishing the large number of cases brought under the circumstances herein described.

We need not determine whether Hagens v. United Fruit Co., 2 Cir., 135 F.2d 842, is controlling upon every plaintiff who receives an award under the Act. The well-reasoned opinion of Circuit Judge Frank concludes that there is a presumption of jurisdiction unless the absence of jurisdiction affirmatively appears on the face of the record and, as a consequence, the award cannot be collaterally attacked. In Hagens, the claimant did exactly what the plaintiff did in the instant proceeding, and the Second Circuit approved the action of the district court in sustaining the motion to dismiss. Through the medium of considering the present case on a motion for summary judgment, there can be no doubt but that the motion must be granted.

Plaintiff relies upon Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, to sustain his theory of recovery on unseaworthiness merely because plaintiff was engaged in maritime work. If plaintiff is correct, the Longshoremen's and Harbor Workers' Compensation Act has effectively been repealed. The Act limits the liability of the employer as an exclusive remedy, as the same pertains to such employer. The *ad hoc* decision in Reed does not carry with it the interpretation which plaintiff's counsel now advances. Pan Atlantic was the owner *pro hac vice* of the vessel, and was likewise the stevedore and, as such, was the employer of the plaintiff-longshoreman. In effect, the longshoreman was doing the traditional work of a seaman and, in such capacity, could not be deprived of his right to recover against the owner of a vessel, where the owner and employer was one party, even though he had received benefits un-

der the Longshoremen's and Harbor Workers' Act.

Finding that there is no dispute as to any material fact, and treating the defendant's motions as a motion for summary judgment, the motion will be granted and the action dismissed with costs to be taxed against the plaintiff.

Present order.