**Charlie DIXON, Petitioner,**

**v.**

**Jerry C. OOSTING, Deputy Commissioner, United States Employees' Compensation Commission, Fifth Compensation District, Respondent,**

**and**

**Liberty Mutual Insurance Company, Intervenor.**

**Civ. A. No. 4521.**

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 2, 1965.

Kelsey & Rabinowitz, Norfolk, Va., for petitioner.

C. V. Spratley, Jr., U. S. Atty., W. T. Mason, Jr., Norfolk, Va., for respondent.

L. S. Parsons, Jr., Norfolk, Va., for intervenor.

WALTER E. HOFFMAN, Chief Judge.

Following the entry of an order denying compensation to petitioner under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., for lack of jurisdiction in that petitioner's injury of December 19, 1961, did not occur upon the navigable waters of the United States, petitioner seasonably filed his complaint requesting (1) a trial *de novo* on the jurisdictional issue, and (2) the suspension and vacation of the alleged erroneous order as entered by the respondent Deputy Commissioner.

There is no factual dispute as to the details of the accident. The Commissioner found:

" * * * that on said day the claimant herein was engaged in the construction of the trestled bridge between Chesapeake Beach and South Island and such bridge was about one-half finished; that on said day he was performing services as a pile

·driver operator on a cap setting rig which rested on piles or uncompleted trestle at a location in Chesapeake Bay, approximately one and one-half miles from Chesapeake Beach, Virginia, and while so engaged and taking up line on gypsy head, sustained accidental injury resulting in his disability when his left arm became entangled in the line causing amputation of left forearm with dislocation of the ulna at elbow, fracture of right femur, multiple lacerations, contusions and abrasions."

The employment by Tidewater-Raymond-Kiewit, a joint venture, is admitted. The intervenor, Liberty Mutual Insurance Company, was the compensation carrier for the employer. The joint venture was engaged in the construction of a project known as the Chesapeake Bay Bridge-Tunnel which, as now completed, forms a continuous roadway across the Chesapeake Bay connecting the land areas of Chesapeake Beach on the south and the Eastern Shore of Virginia on the North, through the medium of low level bridges and two tunnels between specially constructed islands.

The Industrial Commission of Virginia made an award to petitioner under the Virginia Workmen's Compensation Act. On April 25, 1963, petitioner filed his claim with the Deputy Commissioner under the Longshoremen's and Harbor Workers' Compensation Act. The parties concede that if the injuries are compensable under the federal act, the payments made under the state act should be credited thereon. No question has been raised as to election of remedies. While there was some apparent effort on the part of petitioner's counsel to protect such rights, if any, as petitioner may have had under the Jones Act, it is obvious that the cap setting rig could not be considered a vessel or the petitioner a seaman.[1]

The cap setting rig upon which petitioner was serving as a crane operator is a unique, specially constructed piece of equipment used for the purpose of capping piles and pouring concrete therein. It is moved along the tops of previously driven piles well ahead of the completed or partially completed trestle. The equipment is commonly called the "monster" or "two-headed monster." In order to reach the "monster" for the purpose of working thereon it is necessary to take a boat or launch. There is no physical connection with the land or partially completed trestle which would enable one to walk or ride upon a roadway to the site of the "monster". Petitioner's employer furnished water transportation to the work area on the day in question.

The Deputy Commissioner, based upon these facts, merely held that the injury sustained "did not occur upon the navigable waters of the United States." He did not discuss the reasons for his decision or any law applicable thereto.[2]

---

1. The Court's attention is directed to the fact that, on December 17, 1964, petitioner brought a civil action in this Court alleging that petitioner was performing maritime services for Tidewater-Raymond-Kiewit and, as such, is entitled to maintain a claim for damages under the doctrine of Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448. This Court has previously rejected this contention advanced by the same counsel in Biggs v. Norfolk Dredging Company, D.C., 237 F.Supp. 590, decided January 25, 1965 and Clowers v. Tidewater-Raymond-Kiewit, D.C., 237 F.Supp. 1015, decided January 21, 1965. Moreover, the present civil action against the employer may be barred by laches as no attempt has been made to claim any rights under the Jones Act. It is, of course, fundamental that there is no coverage afforded under the Longshoremen's Act for a seaman or member of a crew. Since this matter must be remanded, the acceptance of compensation benefits under the Longshoremen's Act will constitute a waiver of petitioner's rights to hereafter claim that he was a seaman and a member of a crew of a vessel.

2. While not in the record, it was stated in argument that the Department of Labor had at least suggested to the Deputy Commissioner that he rule as he did in this case. This is the third of a series of cases in which it appears that the

Faced with a presumption of correctness as to the findings and conclusions of the Deputy Commissioner, petitioner seeks a trial *de novo* on the jurisdictional facts. He concedes that all facts are stated in record without dispute. With candor, petitioner's counsel states that the sole purpose of seeking a trial *de novo* on the jurisdictional facts is to avoid the legal effect of the Deputy Commissioner's findings. No new evidence would be presented in any trial before the district court.

■ Petitioner relies upon Crowell v. Benson, (1922) 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, and urges that the trial *de novo* is mandatory. Disagreeing with petitioner, we hold that a trial *de novo* on "jurisdictional" issues is a matter of discretion.

While Crowell v. Benson has not been expressly overruled, it has been the subject of considerable comment and criticism. In 1948 the Seventh Circuit held, in relying upon Crowell, that the trial *de novo* was mandatory. Pittsburgh S.S. Co. v. Brown, 7 Cir., 171 F.2d 175. The same problem arose earlier in the Seventh Circuit in South Chicago Coal & Dock Co. v. Bassett, 7 Cir., 104 F.2d 522, aff'd. 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732, but in the affirmance no mention was made of Crowell v. Benson and the issue discussed by the Supreme Court was confined to the matter of exclusion from coverage under the Longshoremen's Act for "a member of the crew."

In Gilmore & Black, The Law of Admiralty, pp. 341, 342, the clear indication is that while Crowell v. Benson has never been overruled, the Supreme Court has declined to apply the jurisdictional fact theory to new situations which on any analysis would appear to be within its scope. And, as demonstrated by the authors of that text, wherever the "discre-

tionary trial *de novo* idea" has been advanced, such a trial has been refused.

The Ninth Circuit has had occasion to consider the effect of Crowell in Western Boat Bldg. Co. v. O'Leary, 9 Cir., 198 F.2d 409, where it is said:

"We do not understand Crowell v. Benson to afford a *trial de novo as a matter of right* under circumstances where there is no issue of fact presented. See Luckenbach S.S. Co., Inc., v. Lowe, D.C.1951, 96 F.Supp. 918, 919. If however, the true rule is contrary to our impression, we simply refuse to invoke it where (as here) no worthwhile purpose would be served thereby. To do so would be to adhere to the superfluous and breed procrastination. Cf. Mr. Justice Frankfurter's concurring opinion in Estep v. United States, 327 U.S. 114, 142, 66 S.Ct. 423, 90 L.Ed. 567."

The Ninth Circuit has consistently followed the rule in the Western Boat case. Morrison-Knudsen Company v. O'Leary, 9 Cir., 288 F.2d 542, cert. den. 368 U.S. 817, 82 S.Ct. 33, 7 L.Ed.2d 24. Actually, the extent of Crowell v. Benson is probably limited to the statement of Chief Justice Hughes that the district court "did not err in permitting a trial *de novo* on the issue of employment."

Other authorities discussing the trial *de novo* theory are Bassett v. Massman Const. Co., 8 Cir., 120 F.2d 230, cert. den. 314 U.S. 648, 62 S.Ct. 92, 86 L.Ed. 520; Massachusetts Bonding & Insurance Co. v. Lawson, 5 Cir., 149 F.2d 853; Riley v. Henderson, 5 Cir., 218 F.2d 752; Tyler v. Lowe, 2 Cir., 138 F.2d 867; Wm. Spencer & Son Corp. v. Lowe, 2 Cir., 152 F.2d 847, cert. den. 328 U.S. 837, 66 S.Ct. 1012, 90 L.Ed. 1613.

■ In the absence of a controlling decision from the Fourth Circuit, this

---

Deputy Commissioner has been persuaded to render a decision in a certain manner on instructions from Washington. It is to be regretted that either the Department of Labor or the Admiralty and Shipping Section of the Department of Justice is following such a practice. It is well settled that the district court

must affirm the findings of the Commissioner if supported "by substantial evidence on the record considered as a whole." District Courts, relying upon such findings, have a right to expect that the Commissioner has rendered his decision in his capacity as a quasi-judicial officer without influence from above.

court adopts the logical reasoning of the Ninth Circuit as the most practical and expeditious solution of the trial *de novo* question. Exercising the discretion vested in the court, the request for a trial *de novo* on the jurisdictional issue is denied.

█ Approaching the problem as to whether petitioner sustained his injury "upon the navigable waters of the United States" we are at a loss to determine how and why the Deputy Commissioner arrived at this conclusion. We start with the presumption that the claim falls within the Longshoremen's Act in the absence of substantial evidence to the contrary. 33 U.S.C. § 920(a). We acknowledge the limited scope of administrative acts by judicial review and fully recognize that the "findings are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole." Ennis v. O'Hearne, 4 Cir., 223 F.2d 755; O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483.

An examination of this record fails to supply any evidence justifying a finding that the injury was not sustained upon the navigable waters of the United States. The "monster" was approximately one and one-half miles from the nearest land, sitting on piling, and totally unconnected with land or any extension of land. No one controverts the fact that the piles upon which the "monster" was resting were in the navigable waters of the United States. The only means of access to the work site was by boat. The "monster" was about 18 feet above the open water and was not attached or connected to any other portion of the partially completed roadway. Workmen on the "monster" were required to wear life preservers. The petitioner could not move but a few feet horizontally without falling into the water. If he attempted to move vertically, he could only do so by sliding down a piling which would place him in the water. His up-vertical position would not be pertinent to this case.

██ It appears unnecessary to enter into any extended discussion of Calbeck v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368, which goes a long way toward destroying the previously existing twilight zone rule. The undisputed facts of this case may be considered in the light of pre-Calbeck authority. Manifestly there is no evidence to support the finding of the Deputy Commissioner. Unless the Longshoremen's Act must be so strictly construed as to mean that there can be no compensable injury unless the injured party comes in contact with the water—a statement that needs no citation of authority to refute—the injury was clearly compensable under the federal act.

To avoid any confusion it should be stated that the Court expresses no opinion with respect to injuries sustained on the now completed bridge-tunnel project. The factual situation there presented may be entirely different.

An order will be entered remanding this matter to the Deputy Commissioner and reversing his order of January 7, 1964, to the extent of his holding that petitioner's injury sustained on December 19, 1961, did not occur upon the navigable waters of the United States. The Deputy Commissioner may then take such further proceedings as may be necessary.

Present order.