Bernard **HARNEY**, Plaintiff-Appellant,

v.

**WILLIAM M. MOORE BUILDING CORPORATION** and Lopier Construction Corporation, Defendants-Appellees.

No. 208, Docket 29754.

United States Court of Appeals
Second Circuit.

Argued Jan. 6, 1966.

Decided April 7, 1966.

Donald D. Olman, New York City, (Jacob Rassner, New York City, on the brief), for plaintiff-appellant.

Vincent A. Catoggio of Purdy, Lamb & Catoggio, New York City, for defendants-appellees.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Bernard Harney appeals from a judgment dismissing his complaint and from the denial of his motion for a new trial, by jury. Harney brought this action under the Jones Act, 46 U.S.C. § 688, alleging negligence, and for unseaworthiness under general maritime law.

Harney was employed by defendants, and his duties took him aboard an unnamed barge tied up on the north side of the Harlem River near a bridge then being constructed or rebuilt by defendants. The barge was used to support a crane used in this endeavor, and to hold supplies. One end of the barge almost touched shore; the other was near one of the bridge piers. Between this end and the shore a cofferdam was being built. On the cofferdam were two six-inch pumps used to keep it pumped out. On the barge was an inch and a half pump used to prime the cofferdam pumps and to pump out the barge.

The barge had no motive power, and remained stationary at all relevant times. There was a light in the deck-house on the barge, but the way to the barge pump was not lighted. Harney worked a shift from 4:00 p. m. to midnight, during which time he was usually on the barge 2-3 hours. No one else was present then. Harney was hired as a stationary pump engineer in November, 1958. His duties included keeping watch and maintaining the cofferdam pumps. Harney testified that his duties also were "to see, * * * that the water wouldn't be high in the barge where it would be ready to sink, or if at any time the barges broke loose, to try to secure it as best I could" (Record, 175). Evidently the craft jurisdiction of his union did not extend to handling lines, however. In the short time Harney was employed by defendants Harney never had occasion to pump out the barge or to secure the barge. His relief testified that he had had to pump out the barge.

Harney was injured on November 25, 1958 while on the barge engaged in priming a cofferdam pump. His testimony was that he tripped over equipment on the barge while making his way to the inch and a half pump, and fell into the river. The barge had no guard-rail. Harney alleged that the barge was unseaworthy because material left by construction workers on the barge was scattered and helter-skelter, there was no light, except a flashlight he carried, and

there was no guard-rail. He testified that "you had to be very cautious in order to walk, and there was no path made to or from the inch and a half pump. You had to pick your way over these materials." Included among those "materials" was cable, line, oxygen tanks, a tool box, and a flexible rod.

Harney made a claim for, and obtained, New York State Workmen's Compensation payments.

Harney demanded a jury trial. But the District Court dismissed the Jones Act claim on the ground that plaintiff was covered by exclusive compensation provisions of the New York Workmen's Compensation Law or the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. The court treated the unseaworthiness claim as if made in admiralty, there being no diversity, and decided after trial without a jury for defendant, on the ground Harney was not performing in ship's service, or, alternatively, that there was no showing of unseaworthiness and that Harney's negligence "contributed 100% to the cause of the accident."

The District Court dismissed the Jones Act claim, citing Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), and Bethlehem Steel Co. v. Moores, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 (1948), on the theory that the case was in the twilight zone, or the area of maritime but local, and "a state statute will be permitted to have force and effect despite the fact that it may deal with a maritime injury" (Record, 327). The state statute given effect was § 11, New York Workmen's Compensation Law, McKinney's Consol.Laws, c. 67, making the employer's liability under that act exclusive (Record, 146).

■ Jurisdiction to award compensation and Jones Act jurisdiction, however, do not overlap. The doctrines of

maritime but local and the twilight zone, which apply to cases of competing compensation schemes (the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, and state acts), have not been extended to cases involving the Jones Act and a compensation scheme. Norton v. Warner Co., 321 U.S. 565, 569, 64 S.Ct. 747, 88 L.Ed. 430 (1944); Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952); Pennsylvania R. Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 (1953) (FELA); Gilmore & Black, Admiralty 355–358 (1957). Furthermore, even in the twilight zone, or in the area of maritime but local, seeking or receiving state compensation is not necessarily a bar to compensation under the Longshoremen's Act, as long as no double recovery is permitted. Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962); Newport News Shipbuilding & Dry Dock Co. v. O'Hearne, 192 F.2d 968 (4 Cir.1951); Western Boat Building Co. v. O'Leary, 198 F.2d 409 (9 Cir.1952); Massachusetts Bonding & Ins. Co. v. Lawson, 149 F.2d 853 (5 Cir.1945); Michigan Mutual Liability Co. v. Arrien, 233 F.Supp. 496 (S.D.N.Y.1964), aff'd 344 F.2d 640 (2 Cir.1965); United States Fidelity and Guaranty Co. v. Lawson, 15 F.Supp. 116 (S.D.Ga.1936).[1] In *Newport* the court even felt that the prior state proceeding was without jurisdiction, that is, that the case was not within the twilight zone; yet the court allowed recovery under the Longshoremen's Act, with a set-off for state benefits. See also Globe Indemnity v. Calbeck, supra, note 1. Accordingly these two cases are particularly applicable to the present situation.

■ All the record reveals is that Harney "did obtain compensation under the New York State Workmen's Compensation Act" (Record, 146), and that he

1. See also Globe Indem. Co. v. Calbeck, 230 F.Supp. 9 (S.D.Texas 1959); Holland v. Harrison Bros., 306 F.2d 369 (5 Cir.1962), modified on rehearing 308 F.2d 570; Matherne v. Superior Oil Co.,

207 F.Supp. 591 (E.D.La.1962); Gulf Oil Corp. v. O'Keeffe, 242 F.Supp. 881 (E.D.S.C.1965); Dixon v. Oosting, 238 F.Supp. 25 (E.D.Va.1965).

"made claim against the defendants * * * under the New York State Workmen's Compensation Statute" (Record, 266). The New York act is of the automatic type, in that payments can be made by the employer's insurance carrier to the employee without any administrative proceedings, let alone an award. N.Y. Workmen's Compensation Law § 25 (1).[2] Only when the employer decides to controvert the right to compensation is there a hearing before the board, leading to an award. § 25(2). The record before us now permits a finding that Harney accepted such voluntary payments, without initiating any proceedings (other than making his claim). Under such circumstances it is clear that he was not barred from pursuing his Jones Act remedies. On remand, of course, the parties are free to develop further facts.

Section 113 of the New York act provides that "awards * * * may be made by the board in respect of injuries subject to the admiralty or other federal laws in case the claimant, the employer and the insurance carrier waive their admiralty or interstate commerce rights and remedies * * *." This statute has received approval when attacked as contrary to the FELA, South Buffalo R. Co. v. Ahern, 344 U.S. 367, 73 S.Ct. 340, 97 L.Ed. 395 (1953); Heagney v. Brooklyn Eastern District Terminal, 190 F.2d 976 (2 Cir.1951), cert. den. 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 688 (1952), and has been held to be effective to waive Jones Act rights, Braadt v. City of New York, 21 A.D.2d 957, 251 N.Y.S. 2d 376 (3rd Dept.1964), aff'd 15 N.Y.2d 875, 258 N.Y.S.2d 413, 206 N.E.2d 349, cert. den. 382 U.S. 21, 86 S.Ct. 83, 15 L.Ed.2d 14 (1965). But since the record at present does not disclose any award, let alone a waiver, Harney was not shown to be barred under this provision.

A final compensation order or award has been said to be *res judicata*, barring a subsequent Jones Act claim. Biggs v. Norfolk Dredging Co., 237 F.Supp. 590 (E.D.Va.1965) (counsel present); Trupasso v. McKie Lighter Co., 79 F.Supp. 641 (D.Mass.1948) (award affirmed in state court). See also Clowers v. Tidewater-Raymond-Kiewit, 237 F.Supp. 1015 (E.D.Va.1965). But a plaintiff is barred neither by an ex parte award, with the claimant not present, Biggs; Smith v. Service Contracting, Inc., 236 F.Supp. 492 (E.D.La.1964), nor by an award made despite efforts of the claimant to withdraw, Wilkes v. Mississippi River Sand & Gravel Co., 202 F.2d 383 (6 Cir.), cert. den. 346 U.S. 817, 74 S.Ct. 29, 98 L.Ed. 34 (1953); compare United States Fidelity & Guaranty v. Lawson, supra.

It appears that non-membership in the crew, under the Longshoremen's Act, is not a "jurisdictional fact," and where an award makes no jurisdictional finding, the presumption of jurisdiction attaches to a Deputy Commissioner's award, and bars Jones Act proceedings. Hagens v. United Fruit Co., 135 F.2d 842 (2 Cir. 1943); but see Bretsky v. Lehigh Valley R. Co., 156 F.2d 594 (2 Cir.1946) (FELA and state award no bar); Hoffman v. New York, N. H. & H. R. Co., 74 F.2d 227 (2 Cir.1934), cert. den. 294 U.S. 715, 55 S.Ct. 513, 79 L.Ed. 1248 (1935) (same); see also Mike Hooks, Inc. v. Pena, 313 F.2d 696 (5 Cir.1963), Smith, supra, and Guidry v. Ocean Drilling & Exploration Co., 244 F.Supp. 691 (W.D. La.1965), which makes the estoppel depend on whether the fact was contested before the state board. In any case, since there was no evidence of a state proceeding or an award, Harney was not shown to be estopped from claiming seaman status. Compare Roth v. McAllister Bros., Inc., 316 F.2d 143 (2 Cir.1963).[3]

---

2. The Longshoremen's Act is similar, § 914; for this reason cases treating the effect on Jones Act recovery of accepting voluntary benefits under the Longshoremen's Act are relevant.

3. We do not understand appellee to suggest, or the present record to support, a theory that Harney *released* his employer from Jones Act liability by accepting a settlement based on workmen's compensation benefits. See Comeaux v. Two-R Drilling Co., 236 F.Supp. 735 (E.D.La.1964). Compare Gahagan Const. Corp. v. Armao, 165 F.2d 301 (1 Cir.), cert. den. 333 U.S. 876, 68 S.Ct. 905, 92 L.Ed. 1152 (1948).

More relevant for this case are those cases holding that filing a claim or accepting voluntary benefits does not prevent a seaman from suing under the Jones Act. On making a claim under the Longshoremen's Act see Oliver v. Ocean Drilling & Exploration Co., 222 F.Supp. 843 (W.D.La.1963) and *Wilkes,* supra; on filing a state claim see *Biggs,* supra, and Marceau v. Great Lakes Transit Corp., 146 F.2d 416 (2 Cir.), cert. den. 324 U.S. 872, 65 S.Ct. 1018, 89 L.Ed. 1426 (1945). When filing a claim is followed by the acceptance of benefits, it has been held that the claimant may sue under the Jones Act. Boyles v. Humble Oil & Refining Co., 209 F.Supp. 857 (E.D.La.1962); Robertson v. Donovan, 219 F.Supp. 364 (E.D.La.1963).

Here, Harney "made a claim." So far as the record shows now, this could mean that he notified his employer of injury, § 18, N.Y. Workmen's Compensation Law; other than this, all Harney is shown to have done is accept benefits. It is universally held that this alone will not bar the Jones Act suit. Kibadeaux v. Standard Dredging Co., 81 F.2d 670 (5 Cir.), cert. den. 299 U.S. 549, 57 S.Ct. 12, 81 L.Ed. 404 (1936); Gahagan Const. Corp. v. Armao, 165 F.2d 301 (1 Cir.), cert. den. 333 U.S. 876, 68 S.Ct. 905, 92 L.Ed. 1152 (1948); Chesser v. General Dredging Co., 150 F.Supp. 592 (S.D.Fla.1957); Lawrence v. Norfolk Dredging Co., 194 F.Supp. 484 (E.D.Va. 1961), aff'd 319 F.2d 805 (4 Cir.), cert. den. 375 U.S. 952, 84 S.Ct. 443, 11 L.Ed. 2d 313 (1963); Garland v. Alaska S.S. Co., 194 F.Supp. 792 (D.Alaska 1961) (dictum); *Boyles,* supra; *Robertson,* supra; *Smith,* supra; compare *Clowers,* supra; see also Mach v. Pennsylvania R. Co., 198 F.Supp. 471 (W.D.Pa.1960).

There appear to be but two cases which are arguably otherwise, and each is distinguishable. In Rackus v. Moore-Mc-Cormack Lines, Inc., 85 F.Supp. 185 (E. D.Pa.1949), plaintiff "exercised his rights to compensation under" the Longshoremen's Act, and was barred from recovery. It is unclear whether there was an award or release. In any case there was a specific finding that he was not a member of the crew. And in Ouzts v. A. P. Ward & Son, 146 F.Supp. 733 (N.D.Fla.1956), accepting voluntary Florida compensation barred recovery for maintenance and cure, where the amounts already received exceeded what could be recovered for maintenance and cure. Since credit is always given for benefits received, the suit could not continue.

Certain cases [4] involving longshoremen (not claiming crewman status) who libel the ship coincidentally belonging to the employer, after receiving Longshoremen's Act benefits, and who are held to be barred by § 905 [5] of that act, were relied on to exclude longshoremen's Jones Act claims. Garland v. Alaska S. S. Co., 217 F.Supp. 757 (D.Alaska 1963), Conzo v. Moore-McCormack Lines, 114 F.Supp. 956 (S.D.N.Y.1953), and Kyles v. James W. Elwell & Co., 296 F.2d 703 (7 Cir.1961), cert. den. 369 U.S. 852, 82 S.Ct. 936, 8 L.Ed.2d 10 (1962). But since plaintiff there is not claiming to be a seaman for the purposes of the Jones Act, that remedy is barred anyway. Swanson v. Marra Bros., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946); Aycock v. Lykes Bros. S.S. Co., 236 F.Supp. 360 (S.D.Texas 1964); Course v. Pacific Inland Nav. Co., 234 F.Supp. 676 (D.Oregon 1964).

We hold that where the record shows only that plaintiff made a claim

---

4. Smith v. The Mormacdale, 198 F.2d 849 (3 Cir. 1952), cert. den. 345 U.S. 908, 73 S.Ct. 648, 97 L.Ed. 1344 (1953); Bennett v. The Mormacteal, 160 F.Supp. 840 (E.D.N.Y.1957), aff'd per curiam 254 F.2d 138 (2 Cir.), cert. den. 358 U.S. 817, 79 S.Ct. 26, 3 L.Ed.2d 59 (1958); Bynum v. The Mormacteal, 188 F.Supp. 763 (E.D.Pa.1960). (Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), qualifies the doctrine of these cases.)

5. Section 905 reads, in relevant part, "The liability of an employer * * * shall be exclusive * * * of all other liability * * * to the employee * * * and anyone otherwise entitled to recover damages * * * at law or in admiralty * * *."

and obtained compensation, and the statute is of the automatic, voluntary, type, so that there is no reason to infer that any proceedings or award occurred, plaintiff is not *thereby* barred from pursuing Jones Act remedies. We wish to make it clear, however, that defendant is free on remand to develop further facts to support the defense of waiver or any other defense.

■ We turn now to the question whether it was error to deny Harney a jury trial on his claim of seaman status. It is well settled that only a master or member of a crew is entitled to recover under the Jones Act. Swanson v. Marra Bros., supra; Jones Act, 46 U.S.C. § 688; Longshoremen's Act, 33 U.S.C. § 903(a)(1). And it has been said that to be a member of the crew, the vessel must be in navigation, there must be a more or less permanent connection with the ship, and the worker must be aboard naturally and primarily as an aid to navigation. McKie v. Diamond Marine Co., 204 F.2d 132, 136 (5 Cir.1953). In "aid to navigation," navigation is read very broadly, so as to include cooks and others who contribute to the welfare of the ship, even though they do not "reef, hand, or steer."

The parties have not expressed any doubt that this vessel is in navigation. The requirement of a permanent connection has generally had the effect of excluding temporary repairmen from Jones Act recovery, but might be read to reach shore-based employees who, though regularly coming aboard, spend less than a full shift there. The rule that the worker must be aboard naturally and primarily as an aid to navigation, South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 258–259, 60 S.Ct. 544, 84 L.Ed. 732 (1940), and cases cited, does not appear in recent years to have been interpreted literally. In Senko v. La Crosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed. 2d 404 (1957), the court, in upholding a jury verdict for plaintiff, observed that he would have "a significant navigational function." 352 U.S. at 374, 77 S.Ct. at 418. In Offshore Co. v. Robison, 266 F.2d 769, 75 A.L.R.2d 1296 (5 Cir. 1959), the

court said of the "naturally and primarily" language, "this test has been watered down until the words have lost their natural meaning."

■ Of course, the three requirements of membership in the crew ought not to be applied without regard to each other. A less permanent connection with the ship might require a more significant navigational function. Compare the language in the dissent by Judge Lumbard in Weiss v. Central R. Co. of New Jersey, 235 F.2d 309, 315 (2 Cir. 1956).

■ Whether plaintiff in a Jones Act case is a crewman is a question of fact, or a mixed question of law and fact. The jury exercises as much latitude on this question as it does on the question of negligence in FELA or Jones Act cases. The Supreme Court has scrupulously, if sometimes cryptically, protected the plaintiff's right to a jury on the question of crewman status. Texas Co. v. Gianfala, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955) mem., per curiam, reversing 222 F.2d 382 (5 Cir. 1955); Senko v. La Crosse Dredging Corp., supra; Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958), per curiam; Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958), per curiam. Even where the facts, as here, are not disputed, the matter is for the jury if conflicting inferences are possible. Weiss v. Central R., supra; Bernardo v. Bethlehem Steel Co., 314 F.2d 604 (2 Cir. 1963).

In some cases plaintiff has had, in addition to other duties, a number of duties traditionally associated with crewmen. In *McKie*, supra p. 654, plaintiff worked on a dredge, and in addition to duties involving the dredging, he tended lines, maneuvered the vessel, and operated a tender which towed the dredge. The court held that crew status presented a jury question. See also Gahagan Const. Corp. v. Armao, supra p. 653, where the deckhand on a dredge also repaired line, fixed anchors, worked the tug, checked running lights, washed the deck, pumped the hold, and took bearings. In Sen-

ko v. La Crosse Dredging Corp., supra, plaintiff was employed on a stationary dredge and would have had a significant navigational function if the dredge had been moved, and his actual duties included cleaning the deck, splicing rope, stowing supplies, and in general keeping the dredge in shape. (Contrast, however, Justice Harlan's view of the facts, in dissent.) And in Weiss v. Central R. Co., supra, plaintiff was aboard a ferry to chock the wheels of railroad cars, but he also operated the wheel, handled line, kept lookout, adjusted the rudder-pin, and cleaned the ferry. See also Offshore Co. v. Robison, supra p. 654.

It is not clear from these cases whether the duties on board which contribute to the functioning of the vessel's mission, but do not contribute to the functioning of the vessel itself, are also among those whose presence may lead to a "salty inference." The possibility that they are becomes important in those cases where the purely nautical tasks are reduced to a minimum.[6] Jeffrey v. Henderson Bros., 193 F.2d 589 (4 Cir. 1951), involved wage claims in admiralty. The vessel was a barge used to clean and load coal dredged from a riverbed. "[M]aritime activity was reduced to a minimum, but it was still necessary * * * to move the boat along the shore from time to time," to secure it with lines, maintain lights, and pump out the hold. Libellant was held a crewman. Jeffrey was relied on in Summerlin v. Massman Const. Co., 199 F.2d 715 (4 Cir. 1952), where a "fireman" on a crane or derrick boat anchored in a river, and used to pour concrete in constructing a bridge, sued under the Jones Act. Although his maritime activity was reduced to a minimum, his duties included assisting in moving the vessel along the river. The court held it was error to decide against plaintiff on the pleadings,

and reversed for trial. In Texas Co. v. Gianfala, supra, decedent was a member of a drilling crew on a barge. The barge was customarily towed to the spot for drilling, then submerged while the drilling went on. Among decedent's duties was that of pumping out the barge to float it in preparation for towing it to a new place. He was injured while the barge was submerged. After the District Court allowed the case to go to the jury, the Fifth Circuit reversed, on the ground that the facts were undisputed and the only inference possible was that plaintiff was not a crewman; the Supreme Court reversed, reinstating the jury's verdict for plaintiff.

It is possible to view these cases as stating that all work on a dredge, barge, or other special purpose vessel, in furtherance of that purpose, is evidence of crewman status.[7] Thus, in *Gianfala*, under this view, plaintiff's work in drilling would be that of a crewman. In Carumbo v. Cape Cod S. S. Co., 123 F.2d 991 (1 Cir. 1941), the court said, "one who does any sort of work aboard a ship in navigation is a 'seaman' within the meaning of the Jones Act." And in Stanley v. Guy Scroggins Const. Co., 297 F.2d 374 (5 Cir. 1961), the court said, "a man having a part to play in the mission of a special function vessel may be a seaman." But in Texas Co. v. Savoie, 240 F.2d 674 (5 Cir. 1957), cert. den. 355 U.S. 840, 78 S. Ct. 49, 2 L.Ed.2d 51, the court set aside a jury verdict in favor of a roustabout working on a platform, who had no navigational duties, "not even * * * the casual task of throwing a rope or making the boat fast."

But we need not decide whether tasks performed aboard ship in furtherance of the vessel's special mission, but not of the vessel itself, are evidence of

6. It is possible that the language employed by the Supreme Court in Senko v. La Crosse Dredging Corp., supra, concerning a "significant navigational function" was meant to convey the rule that for an employee on a special function vessel, whose chief duties are in furtherance of that function, to be a crewman, entitled to

Jones Act remedies, his other duties, in aid of navigation, must be significant.

7. Contrast Note 6, supra; compare The Minna, 11 F. 759 (D.Mich.1882), holding that those employed aboard solely to fish, who do not take part in navigation, may make wage claims against the vessel.

crewman status. Accordingly we need not decide whether priming the cofferdam pumps with the barge pump was such a task. For we hold that the evidence that Harney was required to pump out the vessel, keep watch, and, if the vessel were to break away, secure it, permit an inference of crewman status and merit a jury's consideration. We so read the recent Supreme Court authority, particularly Butler v. Whiteman, supra p. 654.

In *Butler,* a tug was undergoing repairs, and had not made steam for one year. While the facts concerning the employee's duties are sketchy, even in the opinion in the Court of Appeals, Harris v. Whiteman, 243 F.2d 563 (5 Cir. 1957), it appears that plaintiff was a laborer doing odd jobs about the wharf and the tug, and had cleaned the tug's boiler. The Supreme Court held that it was error not to let the jury decide the question of crewman status. Harney's "navigational" duties are no more minimal than were Butler's. And the testimony indicating that the tug might not have been in navigation, which could lead to an inference that Butler was not a crewman, is comparable to the testimony here that Harney was aboard only two to three hours each shift. Thus the evidence indicating that Butler was a crewman is no stronger than that favoring Harney here, and Harney should be able to get to the jury. See also Mach v. Pennsylvania R. Co., 317 F.2d 761 (3 Cir. 1963), where the court held that it was not error for the jury to consider whether a plaintiff was a member of the crew, when his job took him aboard a barge to moor and warp the vessel, and there was evidence that he was customarily off the barge from one to five hours of his eight hour shift.

 The District Court dismissed Harney's unseaworthiness claim on the ground that he was not a seaman, or that there was no unseaworthiness, or that he was 100% contributorily negligent. In our view, under the facts presented, since Harney was aboard ship exposed to the hazards of the ship as much as any crewman, it may be found that the warranty of seaworthiness ex-

tends to him. There is evidence that he was performing some tasks historically done by the ship's crew, and was working in ship's service. Seas Shipping v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Bochantin v. Inland Waterways Corp., 96 F.Supp. 234 (E.D.Mo.1951); Ross v. S. S. Zeeland, 240 F.2d 820 (4 Cir. 1951). Cases such as Forkin v. Furness Withy & Co., 323 F.2d 638 (2 Cir. 1963) and Shenker v. United States, 322 F.2d 622 (2 Cir. 1963), cert. den. American Stevedores v. Shenker, 376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606 (1964), which the District Court examined, do not appear to be apposite, since they deal with whether there were any duties in ship's service, historically done by seaman. We have no doubt that pumping the bilges, keeping watch, and securing lines are seaman's tasks.

It is likely that the unseaworthiness issue would have been tried to a jury with the Jones Act claim, Bartholomew v. Universal Tankships, Inc., 263 F.2d 437 (2 Cir.) cert. den. 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959); see also Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). Since plaintiff may require this, a question arises concerning the need to review the District Court's alternative holding that the barge was not unseaworthy. In *Fitzgerald* the court held that the seaman may require a jury trial of his admiralty claim when joined with, and growing out of the same facts as, his Jones Act suit brought on the law side. This court had affirmed judgment against the seaman on the Jones Act claim, which had been tried to a jury, and the Supreme Court had denied certiorari. Thus only an admiralty claim was left for remand. The shipowner therefore asked that on remand the matter be tried to the court, but the Supreme Court refused, saying that the seaman "is entitled to relief from this error by having the kind of trial he would have had in the absence of error." 374 U.S. at 22, 83 S.Ct. at 1651. In our view this language applies when the error is that the seaman was improperly deprived of Jones Act

remedies. It is unnecessary to hold, therefore, that there was any error in holding the vessel not unseaworthy, for this holding does not survive anyway.

Reversed and remanded for further proceedings.